FILED

2010 NOV 12  AM 11: 20

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

3:-10    1071

# IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF TENNESSEE

## NASHVILLE DIVISION

| | |
|---|---|
| JEFFREY R. COOPER,<br><br>               Plaintiff,<br><br>        v.<br><br>PHILLIP GLASSER, an individual;<br>DAVID GLASSER, an individual;<br>RICHARD GLASSER, an individual;<br>TOUR SAVANT LLC, a Tennessee<br>LLC; HI-DEF ENTERTAINMENT<br>LLC, a Tennessee LLC,<br><br>               Defendants | **COMPLAINT FOR:**<br><br>(1)  VIOLATION OF SECTION 5 OF<br>      THE SECURITIES ACT OF 1933;<br>(2)  VIOLATION OF RULE 10b-5 OF<br>      THE SECURITIES EXCHANGE<br>      ACT OF 1934;<br>(3)  VIOLATION OF §48-2-104 OF<br>      THE TENNESSEE SECURITIES<br>      ACT OF 1980;<br>(4)  VIOLATION OF SECTION<br>      25110 OF THE CALIFORNIA<br>      CORPORATE SECURITIES<br>      LAW OF 1968;<br>(5)  FRAUD;<br>(6)  BREACH OF CONTRACT;<br>(7)  CONVERSION;<br>(8)  PROMISSORY ESTOPPEL;<br>(9)  TORTIOUS INFERENCE WITH<br>      CONTRACTUAL RELATIONS.<br><br>DEMAND FOR JURY TRIAL<br><br><br>Civil Action No. _____ |

1

Plaintiff Jeffrey Cooper, demanding trial by jury, complains and alleges as follows:

## THE PARTIES

### PLAINTIFF

1. Plaintiff JEFFREY COOPER ("Plaintiff" or "Cooper") is an individual who resides in Malibu, California.

### DEFENDANTS

2. Upon information and belief, defendant RICHARD GLASSER ("Richard") is an individual who resides in Los Angeles County, California, but owns property located in Franklin, Tennessee and Chatanooga, Tennessee.

3. Upon information and belief, defendant PHILLIP GLASSER ("Phillip") is an individual who resides in Franklin, Tennessee. Phillip is the son of Richard.

4. Upon information and belief, defendant DAVID GLASSER ("David") is an individual who resides in New York, New York. David is the son of Richard and the brother of Phillip (Richard, Phillip, and David are collectively referred to as "the Glassers").

5. TOUR SAVANT LLC ("Tour Savant") is a Tennessee limited liability company, with its principal place of business in Franklin, Tennessee.

6. HI-DEF ENTERTAINMENT LLC ("Hi-Def"), is a Tennessee limited liability company, with its principal place of business in Brentwood, Tennessee.

7. At all times herein mentioned, all defendants, were the agents, servants, and employees of their co-defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as those agents, servants, and employees and with the permission and consent of their co-defendants.

///

///

///

2

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this action pursuant to the Securities Act of 1933, Section 1 *et seq.,* as amended ("Securities Act"), and in particular Section 5 [15 U.S.C. § 77e] and Section 12 [15 U.S.C. § 77l; The Securities Exchange Act of 1934, Section 1, *et seq.*, as amended ("Exchange Act") [15 U.S.C. § 78a *et seq.*], particularly Section 10(b) [15 U.S.C. § 78j(b)]; and SEC Rule 10b-5 promulgated thereunder [17 C.F.R. § 240].

9. This Court has supplemental subject matter jurisdiction over all state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

10. This Court also has jurisdiction pursuant to a forum selection clause contained in a contractual agreement between the parties (the Side Letter) that is at issue in this lawsuit, which provides that the venue for any controversy or claim arising out of or related therefrom shall be the appropriate state and federal courts located in Williamson or Davidson County in Tennessee.

11. This Court has personal jurisdiction over defendant Phillip because he is a resident of Tennessee. This Court has personal jurisdiction over defendants Richard and David because they committed acts intended to have tortuous effect in Tennessee. Additionally, Richard owns residential property in Tennessee.

12. This Court has jurisdiction over Hi-Def and Tour Savant because they are Tennessee Limited Liability Companies.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), (c) and (d) because a substantial part of the events or omissions giving rise to the claims asserted herein, including the purchase and sale of securities, as well as the misrepresentations and omissions, occurred in the State and the Middle District of Tennessee, Nashville Division. In addition, each defendant resides and/or is found and/or transacts his or its affairs in the Middle District of Tennessee.

///

3

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.     In December 2004, Cooper was flying from Los Angeles to St. Maarten. Sitting next to him on the airplane was Richard, who was traveling with his wife. Richard told Cooper he lived in Encino, California  and worked in the music industry.  In this conversation, Richard began talking to Cooper about the entertainment industry and monies that could be made in it.  The conversation soon turned to a pitch from Richard to Cooper. He told Cooper he should meet his son Phillip, who had partnered with an associate of his, Paul Rogers ("Rogers").  Richard related that he had introduced Rogers to his son, Phillip, as both Richard and Rogers worked in the music industry. Richard said that Phillip and Rogers were creating a startup film company.  Richard indicated that Phillip worked with Yari Film Group ("Yari") in Los Angeles, an independent film company (which has since gone bankrupt), and that Richard and David had offices there. Richard went on to describe how the new startup would succeed and proceeded to solicit Plaintiff to invest in the new venture because it was a "natural" and would succeed with the help of David, his other son, and a then top executive at Yari, who was in a position to "funnel" significant projects that came into Yari to Phillip and Rogers' company. Richard stated that the access that Yari had to talent and financing and distribution would ensure the success of the project according to the Glassers.  Further, Plaintiff was told in this conversation that the ability of Roe Baker, Richard's wife, who is a casting agent, was also purported to be integral in making things work.

15.     Thereafter, during the following months, Plaintiff was pursued by Richard and his two sons, Phillip and David, to invest in the new venture.

16.     In the following months, Richard proposed that Plaintiff meet with him and David, at Yari's facilities on Wilshire Boulevard in Los Angeles, and the three so met. David was then an executive at Yari Film Group.  Plaintiff was told by Richard and David that David would be heavily involved in the financing and distribution arrangements of the new company.  At that same meeting Richard placed a conference

4

call on his speakerphone and introduced Plaintiff to his son, Phillip, who informed Plaintiff he resided in Tennessee. At that meeting David represented that he was in a position to play a significant role in helping the new company and was incentivized to do so, and would make sure that his brother Phillip was successful because he would direct and divert projects at his company, Yari Films, to the new venture.

17.     In the weeks that followed, Richard set up a meeting at the Peninsula Hotel in Beverly Hills, California, where Plaintiff was introduced to Rogers by Richard, who also attended the meeting. Rogers explained that he worked for a company called Fintage, which collected music business revenues for performers and creators in the music industry. At or about that time, Plaintiff was presented with a "Leveraged Expansion Plan," a true and correct copy of which is attached hereto as Exhibit 1, which contained the first proposal to Plaintiff. According to the Leveraged Expansion Plan, Rogers stated that his fees from Fintage would go from $215,000 to $400,000 by year five of the venture, and would be utilized to fund the new entity to be created. *See* Exhibit 1, p. 2.

18.     Plaintiff was subsequently provided another "business plan" a true and correct copy of which is attached hereto as Exhibit 2.

19.     David repeatedly solicited Plaintiff to invest in the venture. Additionally, Plaintiff was consistently told by Rogers and the Glassers, during the period they were seeking to have Plaintiff as an investor in the venture, that the risk was low. This was a false statement as the risk was exceptionally high.

20.     The venture was to produce films. Plaintiff was induced to go to Cannes, France for the Film Festival in May of 2005, to watch David "in action" as he made film financing and distribution deals.

21.     Plaintiff was informed by Rogers and the Glassers on numerous occasions in the first four months of 2005 that the company would be operated by Rogers and Phillip. Rogers and the Glassers represented to Plaintiff on numerous occasions in 2005,

in person and on the phone, that they were experienced professionals in the entertainment industry. This was false and deceptive as Rogers had no film experience and Phillip had no credits as a producer. Further, Rogers and the Glassers did not reveal that in 2001, David and his company, for whom on information and belief Phillip then worked, was sued by Alec Baldwin for failure to pay him and the crew members of the motion picture, "The Devil and Daniel Webster," and that the production of that movie had been a public relations disaster for David.

22.     Rogers and the Glassers informed Plaintiff that Rogers was willing to minimize Plaintiff's risk by assigning to the new company, monies that were due him from Fintage and that Plaintiff would have these monies as collateral if Plaintiff became an investor. Plaintiff's obligation was to provide a letter of credit up to $500,000 for the company to use. Rogers pushed Plaintiff to invest.

23.     To further induce Plaintiff to provide these monies, he was sent emails and "business plans" created by Rogers and Phillip. These documents include a draft Deal Memo to establish NEWCO LLC, dated February 9, 2005, and a final Deal Memo dated March 17, 2005 establishing NEWCO LLC. True and correct copies of the Deal Memos are attached herein as Exhibit 3.

24.     On March 21, 2005, Hi-Def Entertainment LLC ("Hi-Def"), a Tennessee limited liability company, was created. On April 13, 2005, Rogers sent Plaintiff a copy of the "Operating Agreement" and the "Side Letter" that he proposed Plaintiff sign. A true and correct copy of the Record Book (which is effectively, the operating agreement) of Hi Def is attached hereto as Exhibit 4. The owners of Hi-Def are Richard (5%)(in consideration of his solicitation of Plaintiff's investment); Phillip (37.5%); Rogers (37.5%); and Plaintiff (20%).

25.     Plaintiff did not execute the original Side Letter, which is dated April 1, 2005, because he wanted more security than was provided for in the original draft. Rogers had promised Plaintiff would be secured by the Fintage monies due to Rogers, so

6

he sent Plaintiff a revised copy on April 13, 2005. A true and correct copy of the revised and executed Side Letter is attached hereto as Exhibit 5. The agreement provides that Rogers would assign the monies due to him from Fintage to Hi-Def, which would be used to pay down any monies Plaintiff had put in pursuant to the letter of credit agreement. Specifically, the Side Letter provides that "[i]n the event that this Agreement is terminated for any reason without cause (i.e. Plaintiff, Rogers and Glasser have all met their obligations hereunder) . . . and if the Credit Line remains unrecouped after April 1, 2009, all Fintage Receipts received by Rogers until April 1, 2012 shall be used solely to repay any Accrued Interest and outstanding principal on the Credit Line. . . . Rogers agrees to remit the Fintage Receipts to Company within fifteen (15) days of his receipt thereof in each instance, and Company shall have the right to audit Rogers' books and records upon reasonable notice from time to time to verify the Fintage Receipts."). *See* Exhibit 5, ¶ 2.

26. The "Contribution Agreement" states that "the membership interests are not being registered . . . on the ground that the issuance of such membership interests are exempt both as not involved a public offering and as an intrastate offering." *See* Exhibit 4, pp. 36-37. However, this is impossible as Plaintiff is a resident of California. Plaintiff did not understand what an intrastate offering is until shortly before this Complaint was filed.

27. Rogers and Phillip both represented to Plaintiff on many occasions that Rogers' compensation from Fintage was approximately $200,000 annually at the time they were initially pitching Plaintiff. This was in the business plan presented to Plaintiff in February of 2005. ("We estimate that over a five year plan we can grow ERM's income from approximately $250,000 per year to over $4,000,000 per year by leveraging the royalty income to create films and music projects which we will own.") Rogers and Phillip stated that the number would grow every year by at least ten to fifteen percent, and would be sufficient to ensure that he was made whole in the worst-case scenario.

These representations were made regularly by Rogers and Phillip up to, and at the time of, the signing of the Contribution Agreement and the Side Letter, as well as by Richard during the time he was introducing Plaintiff to Phillip and Rogers, and at the meeting with Rogers in early 2005 at the Peninsula Hotel in Beverly Hills.

28.     Plaintiff complied with his obligations and made $500,000 available to Hi-Def, which has almost been completely used. He has never been provided with any private placement memorandum. He never had any attorney review any documents relating to his investment into Hi-Def. He does not meet the standards of a "qualified purchaser" under Cal. Corp. Code § 25102(n) and he never received or reviewed a disclosure statement prior to investing monies in Hi-Def, as required by the California Corporate Securities Law of 1968. Additionally, Plaintiff neither saw, nor signed, any document stating that he had reviewed the definition of "accredited investor" as required in TENN. CODE. ANN. §48-2-103.

29.     On February 12, 2009, in response to Plaintiff's email inquiry regarding when he would be repaid the monies he was due, Rogers explained to Plaintiff that "As you know, any money after April this year will go to repay the $500k line of credit. The next payment is expected July/August." A true and correct copy of this February 12, 2009 email is attached hereto as Exhibit 6.

30.     Pursuant to the Side Letter, Hi-Def was to receive the "Fintage Receipts" from Rogers commencing in April 2009. Plaintiff was informed at various times that Fintage paid Rogers in January and July; however, Rogers did not pay over the monies to Plaintiff as required. Plaintiff spoke with Rogers in October 2009, and asked him about the payment. Rogers told Plaintiff he was having financial problems and had taken these monies for his own benefit, and that the amount that Rogers received from Fintage was about $35,000.

31.     Plaintiff spoke with Phillip about these issues on numerous occasions between August 2009 and October 2009. He asked that Plaintiff give Rogers another 30

**8**

days to pay him. During these phone calls, Phillip promised Plaintiff that said he would personally make good on the payment – even if he had to go to his parents – if Rogers did not pay the money. Phillip has not made good on his promise.

32.     Attached hereto as Exhibit 7 is a true and correct copy of an email from Rogers to Plaintiff dated October 1, 2009. This email was sent to Plaintiff before he had the previously-referenced conversation with Rogers, but had gone into his junk email filter, and consequently, was not discovered until October 29, 2009. In this email, Rogers explained that he was having financial difficulties and asked Plaintiff to forgive him. He wrote "I will make sure you get paid, but if I send you my last dime now, I will have to declare bankruptcy. Then all future Fintage money will be given to the trustee to pay off all my other debts . . . ." In this email, Rogers indicated he was starting a new business, and provided Plaintiff with a copy of the Business Plan, a true and correct copy of which is attached hereto as Exhibit 8.

33.     Rogers' new company is called Tour Savant LLC, a Tennessee Limited Liability Company ("Tour Savant"). According to the Business Plan, Rogers owns 100% of the Company. *See* Exhibit 8, p. 8. Moreover, the Business Plan also indicates that Rogers has invested $35,000 into Tour Savant. *See* Exhibit 8, p. 4. This corresponds with the monies that were due to be paid by Fintage and, on information and belief, were used by Rogers to fund his new venture. Rogers also indicates in the Business Plan that his Board of Advisors includes the two owners of Fintage House and Fintage Music, Robbert Aarts and Niels Teves.

34.     The October 1, 2009 email, attached herein as Exhibit 7, also states that "Phil never put in a dime and yet took partner draws of hundreds of thousands over the years. Both he and his brother David did very well out of Hi-Def . . . ." In the last two years, on many occasions, Phillip and Rogers assured Plaintiff that they would personally be responsible to repay Plaintiff any part of the credit line and interest that was not paid by the Fintage Receipts.

9

35.     In October 2009, Plaintiff asked Rogers to sign an Irrevocable Letter of Direction so Plaintiff would be paid the funds due him. On October 26, 2009, Plaintiff received an email from Rogers asking him to sign an "Irrevocable Letter of Direction," which appears to have been created by an attorney for Rogers, wherein Fintage was directed to pay the Fintage Receipts to Plaintiff; however, this would be in satisfaction of all of Rogers' obligations to Plaintiff. This was unacceptable because Plaintiff did not know how much was to be paid, and because Rogers was attempting to sanitize the conversion of the $35,000 that he had already misappropriated to launch Tour Savant. Rogers told Plaintiff, over the telephone, that the letter of direction he had sent had been created by his attorney. A true and correct copy of the October 26, 2009 Irrevocable Letter of Direction ("LOD") is attached hereto as Exhibit 9.

36.     Plaintiff spoke with Phillip in later October about Rogers' failure to pay him the monies due. He again promised Plaintiff that he would be responsible for the money. In an email dated October 31, 2009, Phillip confirmed that "We were talking about what happens if the Fintage money doesn't cover the whole amount due, and I clarified that I believed Paul and I were still responsible for the balance, and if so I told you I believed my family would not let me fall, and would go to them." A true and correct copy of the email dated October 31, 2009 is attached herein as Exhibit 10.

37.     Plaintiff then engaged counsel, Neville L. Johnson, of Johnson & Johnson LLP in Beverly Hills, California, to deal with the issue of repayment and demanded the same from Rogers. A demand letter was sent to Rogers, dated December 1, 2009, a copy of which is attached hereto as Exhibit 11.

38.     Plaintiff did not obtain any of the documents and information requested, and Rogers refused to sign the LOD. Instead, on December 17, 2009, Plaintiff's attorney received an email/letter from William L. Norton III, which indicated that Rogers would not cooperate and was refusing to pay over the monies due. Plaintiff's attorney, Neville Johnson, subsequently spoke with Mr. Norton, and demanded compliance, and followed

10

up with an email. Mr. Norton replied by email that Rogers was not going to rush into anything. On January 14, 2010, Norton confirmed that Rogers would pay no monies.

39.     Plaintiff's attorney wrote a demand letter to the Glassers on December 4, 2009, asking for documents and information. A true and correct copy of this letter is attached hereto as Exhibit 12. That same day, David wrote an email to Plaintiff's attorney querying why he had been sent the letter and asked that in the future another email address be used. David also stated that he would call Plaintiff's attorney, Mr. Johnson, the following Monday; he did not do so.

40.     On December 21, 2009, Plaintiff's attorney received an email from Phillip stating that they would hear from his attorney the following week; however, there has been no communication.

41.     In short, Plaintiff has been "stonewalled" – he is receiving no information, no cooperation, and no repayment of the monies due him. Rogers and the Glassers refuse to provide any books and records relating to the monies that are due.

42.     Further, Plaintiff has not been provided with K-1 form for 2009, which he needs for his tax returns. Rogers and the Glassers appear to have abandoned Hi-Def, and Rogers has reneged on his obligation to pay over Fintage Receipts to Plaintiff. Fintage refuses to provide any information regarding monies due to Rogers or Plaintiff. Rogers declared bankruptcy on July 2, 2010. Plaintiff has filed a separate action in Rogers' bankruptcy proceeding and is not attempting to interfere with assets under the jurisdiction of the bankruptcy court by filing this action.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF SECTION 5 OF THE SECURITIES ACT OF 1933

### (Against Defendants Richard, Phillip and David)

43.     Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

///

11

44.     Rogers and the Glassers failed to file the registration and disclosure statements as required by Section 5 of the Securities Act of 1933. The "Contribution Agreement" stated that the membership interests were not being registered on the grounds that the issuances of such membership interests were exempt because it was not a public offering and was offered intrastate. In fact, there were no exemptions to the registration requirement, as the securities were sold interstate from Tennessee to California.

45.     Therefore, Defendants violated Section 5 of the Securities Act of 1933 by directly, or indirectly, making use of instruments of interstate commerce (e.g., email, airplane) to sell the membership interest in Hi-Def to Plaintiff when no registration was in effect [15 U.S.C. § 77e], resulting in liability of Defendants to Plaintiff under Section 12 of the Securities Act of 1933 [15 U.S.C. § 77l].

46.     Plaintiff seeks this Court to order disgorgement, rescission, and /or restitution, or other proper equitable relief, as determined to be necessary, pursuant to Section 20 of the Securities Act of 1933 [15 U.S.C. § 77v].

## SECOND CLAIM FOR RELIEF

## VIOLATION OF RULE 10b-5 OF THE SECURITIES
## EXCHANGE ACT OF 1934

### (Against Defendants Richard, Phillip and David)

47.     Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

48.     Since at least as early as December 2004, to date of this Complaint, in California and elsewhere, Rogers, and the Glassers, and each of them, and other persons, directly or indirectly, singly and in concert, aiding and abetting each other, each acting as agent for each and every other defendant herein, by use of the means of instrumentalities of interstate commerce or of the mails, have employed devices, schemes, and artifices to defraud; made untrue statements of material facts, and have omitted to state material facts

12

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged in acts, practices, and a course of business which acted as a fraud and deceit upon Plaintiff in connection with the offer, purchase and sale of the membership interests in Hi-Def, in violation of 15 U.S.C. § 78j.

49.     Rogers, and the Glassers committed the following overt acts in furtherance of their scheme and conspiracy to defraud Plaintiff: (1) Richard solicited Plaintiff on a plane in December 2004 to invest in a startup business venture with himself, Rogers and Phillip; (2) Richard set up several meetings and conference calls with Rogers, Phillip and David at fancy hotels in Beverly Hills, California, to further their scheme of manipulating Plaintiff to invest $500,000 into Hi-Def; (3) Rogers and the Glassers knowingly made promises to Plaintiff that the investment risk was low and that Plaintiff would, at the very least, get back his investment pursuant to an assignment of monies under the Side Letter; and (4) Rogers, and the Glassers falsely represented both the annual amount of money and the percentage of growth of that money that would be used to repay Plaintiff under the Side Letter. These were false representations because the investment was highly speculative. Phillip and Rogers falsely indicated they had the experience and knowledge to produce films, when they knowingly did not. On information and belief, the Glassers had never produced a movie before. Furthermore, the Glassers did not provide material information that David was highly litigious and had been a defendant in least twenty (20) lawsuits since 1993. These were material omissions. In reliance upon these knowingly false and misleading statements, and because there were material omissions, Plaintiff entered into the Side Letter and invested $500,000 in Hi-Def. But for these knowingly false and misleading representations, Plaintiff would never have invested in Hi-Def.

50.     The above-referenced omissions and misrepresentations of fact are material because they affected Plaintiff's conduct in deciding to invest in Hi-Def. Further, Rogers' and the Glassers' material omissions and misrepresentations about the monies due from Fintage were made with knowledge of falsity or without sufficient information

13

to warrant representation. The fact that Rogers, to date, has only received $35,000 from Fintage (to Plaintiff's knowledge) is further evidence that $200,000 per year was a blatant misrepresentation.

51.     Plaintiff had no reason to doubt the self-proclaimed "experienced professionals in the entertainment industry." Plaintiff is an unsophisticated investor who, prior to his investment complained of herein, had never been an officer, director, or shareholder in a startup company such as Hi-Def. Moreover, Plaintiff was not represented by counsel at any negotiations, execution of contracts, or otherwise.

52.     Plaintiff relied solely upon the material misrepresentations made by Rogers, Richard, Phillip and David in purchasing the security interest in Hi-Def, and he would not have invested the $500,000 but for the misrepresentations of being paid back in full. This reliance was detrimental, as it directly caused Plaintiff economic damages of at least $500,000 plus accrued interest calculated monthly as actually charged to Plaintiff by the lending institution making the credit line available ("Accrued Interest").

### THIRD CLAIM FOR RELIEF

### VIOLATION OF §48-2-104 OF THE

### TENNESSEE SECURITIES ACT OF 1980

### (Against Defendants Richard, Phillip, David and Tour Savant)

53.     Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

54.     Rogers and the Glassers sold a "security," as defined under Tenn. Code Ann.§48-2-102(16) in Hi-Def, a startup Tennessee Limited Liability Company ("Hi-Def") to Plaintiff.

55.     The sale of this security was in violation of Tenn. Code Ann.§48-2-104 because such security was not registered and no exemptions to registration apply. For example, §48-2-103(b)(4) is inapplicable because the security was not sold in Tennessee. Also, §48-2-103(b)(14) does not exempt registration because Rogers, Richard, and

14

Phillip did not obtain a written certification from Plaintiff certifying that he had reviewed the definition of "accredited investor" and met such definition. Further, the security was not a "covered security" because it did not meet the requirements set forth in §48-2-103(8).

56. Pursuant to this Court's inherent equity power, and Tenn. Code. Ann.§48-2-119(a), Plaintiff seeks to restrain and permanently enjoin all further business activities by Richard, Phillip, David, and Tour Savant in contravention of Tennessee law and as described in this Complaint.

57. Plaintiff seeks that this Court temporarily and permanently enjoin all persons, including Richard, Phillip, David, from disposing of, transferring, relocating, dissipating or otherwise altering the status of any of Hi-Def's or Tour Savant's assets, books, or records, or assets, books and records controlled by such person, without prior approval of this Court pursuant to Tenn. Code Ann.§48-2-119.

58. Plaintiff also seeks that this court adjudge and decree that the Glassers have engaged in aforesaid acts and practices in violation of the Tennessee Securities Act of 1980.

59. Plaintiff asks the Court for the appointment of a receiver with all powers and duties as the Court directs. Said receiver should also be empowered to take other action required to preserve Hi-Def and Tour Savant's assets wherever existing until a full hearing can be held.

60. Finally, Plaintiff seeks this Court to order disgorgement, rescission, and /or restitution, or other proper equitable relief, as determined to be necessary, pursuant to Tenn. Code Ann. §48-2-119(b).

///

///

///

///

15

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF SECTION 25110 OF THE CALIFORNIA

## CORPORATE SECURITIES LAW OF 1968

### (Against Defendants Richard, Phillip, David, Tour Savant)

61.     Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

62.     Rogers, Richard, Phillip, and David sold a "security," as defined under Cal. Corp. Code § 25019 in Hi-Def, a startup Tennessee Limited Liability Company ("Hi-Def") to Plaintiff.

63.     The sale of this security was in violation of Cal. Corp. Code § 25110 because such security was not qualified and no exemptions or preemptions to qualification apply.  For example, Corp. Code § 25102 is inapplicable because, among other reasons, Plaintiff was neither a "qualified purchaser," nor did he have a preexisting personal or business relationship with Rogers, Richard, Phillip or David prior to the offer and sale of the security interest in Hi-Def.  Moreover, Hi-Def's securities were neither listed (nor authorized for listing) on the New York or American Stock Exchanges, nor constitute NASDAQ national market system securities, thus warranting exemption under Corp. Code § 25100.1(a).  Likewise, Corp. Code § 25100.1(b) does not exempt qualification because the securities were not issued by an investment company that is registered under the Investment Act of 1940 and has fulfilled certain filing requirements with Corporations Commission prior to the sale. Rogers, Richard, and Phillip did not obtain a written certification from Plaintiff certifying that he had reviewed the definition of "accredited investor" and met such definition. Finally, the security was not qualified because Rogers, Richard and Phillip did not obtain a permit from the Corporations Commissioner authorizing Hi-Def to see and issue securities within California, pursuant to Corp. Code § 25113.

///

16

64. Pursuant to this Court's inherent equity power, and Corp. Code § 25530, Plaintiff seeks to restrain and permanently enjoin all further business activities by Richard, Phillip, David, and Tour Savant in contravention of California law and as described in this Complaint.

65. Plaintiff seeks that this Court temporarily and permanently enjoin all persons, including Richard, Phillip, and David from disposing of, transferring, relocating, dissipating or otherwise altering the status of any of Hi-Def's or Tour Savant's assets, books, or records, or assets, books and records controlled by such person, without prior approval of this Court pursuant to Corp. Code § 25530.

66. Further, Plaintiff prays that this court adjudge and decree that Richard, Phillip, and David have engaged in aforesaid acts and practices in violation of the California Corporate Securities Law of 1968.

67. Plaintiff also asks the Court for the appointment of a receiver with all powers and duties as the Court directs. Said receiver should also be empowered to take other action required to preserve Hi-Def and Tour Savant's assets wherever existing until a full hearing can be held.

68. Plaintiff seeks this Court to order disgorgement, rescission, or restitution, or other proper equitable relief, as determined to be necessary, pursuant to Corp. Code § 25501 and § 25501.5.

## FIFTH CLAIM FOR RELIEF

### FRAUD

### (Against Defendants Richard, Phillip and David)

69. Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

70. Rogers and the Glassers intentionally misrepresented the fact that Plaintiff would at the very least, be made whole regarding his $500,000 investment in Hi-Def. This is because Rogers and the Glassers misrepresented that Rogers took in at least

17

$200,000 per year from Fintage, which was supposed to be the source of repayment on Plaintiff's loan over the course of three years. Plaintiff had no background, experience, or sophistication in the entertainment industry and had no reason to doubt Rogers, Richard, Phillip, and David who claimed to be "experienced professionals."

71.     Promises were made by Rogers and the Glassers to induce Plaintiff's reliance that the investment risk was low and that Plaintiff would, at the very least, get back his investment pursuant to an assignment of monies under the Side Letter. Rogers and the Glassers falsely represented the annual amount of money, as well as the percentage of growth of said money, that would be used to repay Plaintiff under the Side Letter. Rogers and the Glassers knew these were false representations; the investment was highly speculative. Rogers and Phillip falsely indicated they had the experience and knowledge to produce films, when they did not. On information and belief, Phillip had never produced a movie before. Further, the Glassers did not provide material information that David was highly litigious and had been a defendant in least twenty (20) lawsuits since 1993. These were material omissions.

72.     In reliance upon these false and misleading statements, and because there were material omissions, Plaintiff entered into the Side Letter. Further, Plaintiff did not have an attorney present at any negations nor did an attorney review any of the investment documents that Plaintiff signed. Instead, Plaintiff reasonably relied solely, and to his detriment, upon the repeated, false representations of Rogers and the Glassers that the "risk was low."

73.     The above-referenced omissions and misrepresentations of fact are material because they affected Plaintiff's conduct in deciding to invest in Hi-Def. A reasonable person would conclude his risk was low because he would be paid back in full based upon the misrepresentations by Rogers (as a representative of Hi- Def) and the Glassers.

74.     Rogers' and the Glassers' omissions and misrepresentations about the monies due from Fintage were made with knowledge of falsity or without sufficient

18

information to warrant representation, and the omissions were material. The fact that Rogers, to date, has only received $35,000 from Fintage (to Plaintiff's knowledge) is further evidence that $200,000 per year was a blatant misrepresentation.

75.     Rogers, as a representative of Hi- Def, intended to induce Plaintiff to invest in Hi-Def by misrepresenting the true financial income from Fintage. Rogers knew that Plaintiff would be much more likely to invest if he thought the investment was safe. Therefore, Rogers misrepresented the income from Fintage to make Plaintiff think he would be paid back and to get Plaintiff to invest the $500,000.

76.     Plaintiff justifiably relied upon the above-referenced misrepresentations, and because there were material omissions, he would not have invested the $500,000 but for the misrepresentations of being paid back in full. Plaintiff had no reason to doubt the self proclaimed "experienced professionals in the entertainment industry."

77.     Rogers' and the Glassers' omissions and misrepresentations directly resulted in Plaintiff's financial loss of at least $500,000, plus Accrued Interest.

78.     Because Plaintiff's consent to invest in Hi-Def was given based on fraudulent circumstances, Plaintiff asks for rescission of the Side Letter and the return/reimbursement of his initial investment of $500,000.

79.     Plaintiff also seeks all remedies allowed under the law and at equity, and to elect such remedy at a later date.

80.     Defendants' acts were egregious, reckless, oppressive, malicious, and fraudulent subjecting Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights so as to justify an award of exemplary damages against them. Such conduct was unauthorized and was egregious, intentional, fraudulent or reckless under Tennessee law, entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of the Defendants in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

#### (Against Defendants Richard, and Phillip)

81.     Plaintiff realleges and incorporates by this reference allegations contained in the preceding paragraphs, as though fully set forth herein.

82.     Plaintiff alleges this claim in the alternative to its cause of action for Breach of Contract.

83.     Rogers, Richard and Phillip made a promise clear and unambiguous in its terms that Plaintiff would be assigned certain payments received from Fintage, in consideration of Plaintiff purchasing a $500,000 security interest in Hi-Def.

84.     Plaintiff relied on these promises made by Rogers, Richard, and Phillip in purchasing the security interest in Hi-Def, and he would not have invested the $500,000 but for the promise of being paid back in full.

85.     Plaintiff's reliance was both reasonable and foreseeable in light of the multiple assurances by Rogers, Richard, and Phillip that Plaintiff's investment was low risk and it would be further minimized because, pursuant to the Side Letter, Rogers would assign the monies due to him from Fintage to Hi-Def, which would be used to pay down any monies Plaintiff had put in pursuant to the letter of credit agreement.

86.     As a direct and proximate result of Plaintiff's reliance on the promises made by Rogers, Richard, and Phillip, Plaintiff has suffered damages amounting to at least $500,000 plus Accrued Interest.

## SEVENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

#### (Against Defendants Richard and Phillip )

87.     Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

88.     The Side Letter, attached hereto as Exhibit 5, constitutes a written contract between Rogers, Richard, Phillip and Plaintiff

89.     Pursuant to the Side Letter, Rogers, Richard, and Phillip promised, *inter alia*, to cause to be assigned to Plaintiff certain payments received from Fintage, in consideration of Plaintiff purchasing a security interest in Hi-Def.

90.     Plaintiff performed all his obligations under the Side Letter when he provided a $500,000 investment in Hi-Def.

91.     Richard and Phillip materially breached the Side Letter by failing to cause to be assigned to Plaintiff the Fintage Receipts as required pursuant to the Side Letter. Instead, Rogers used the $35,000 received from Fintage for his own personal benefit in creating another startup company, Tour Savant.

92.     As a direct and proximate cause of Rogers', Richard's, and Phillip's material breach, Plaintiff has suffered a financial loss of at least $500,000 plus Accrued Interest.

93.     Plaintiff seeks all remedies allowed under the law and at equity, and to elect such remedy at a later date.

### EIGHTH CLAIM FOR RELIEF

### CONVERSION

### (Against Defendants Tour Savant)

94.     Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

95.     The $35,000 due to Plaintiff is tangible personal property because it came from a specifically identifiable fund for which Rogers had an obligation to assign to Plaintiff under the Side Letter.

96.     Plaintiff had an immediate right of possession in the $35,000 under the Side Letter because Plaintiff's $500,000 investment in Hi-Def had not yet been repaid.

97.    Rogers wrongfully disposed of the $35,000 due to Plaintiff by using it to invest in Tour Savant. This wrongful disposition denies Plaintiff's right of dominion over such property.

98.    Rogers intended to exercise dominion over the $35,000 by an affirmative act when he told Plaintiff on or about October 2009, that he had financial problems and had taken the money for his own benefit and that the amount was about $35,000.

99.    Rogers' failure to assign Plaintiff the $35,000, as required by the Side Letter, proximately caused Plaintiff actual injuries in the amount of at least $35,000 plus Accrued Interest. To the extent Rogers received more than $35,000 from Fintage, then that money has been converted as well.

100.    Defendants' acts were egregious, reckless, oppressive, malicious, and fraudulent subjecting Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights so as to justify an award of exemplary damages against them. Such conduct was unauthorized and was egregious, intentional, fraudulent or reckless under Tennessee law, entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of the Defendants in an amount to be determined at trial.

101.    Pursuant to this Court's inherent equity power, Plaintiff seeks to restrain and permanently enjoin all further business activities by Tour Savant in contravention of Tennessee law and as described in this Complaint, including the imposition of a constructive trust on Tour Savant.

102.    Plaintiff seeks that this Court temporarily and permanently enjoin all persons and entities, including the Glassers, Hi-Def, and Tour Savant from disposing of, transferring, relocating, dissipating or otherwise altering the status of any of Tour Savant's assets, books, or records, or assets, books and records controlled by such person or entity, without prior approval of this Court.

22

103. Plaintiff asks the Court for the appointment of a receiver with all powers and duties as the Court directs. Said receiver should also be empowered to take other action required to preserve Tour Savant's assets wherever existing until a full hearing can be held.

104. Plaintiff seeks this Court to order disgorgement, rescission, and /or restitution, or other proper equitable relief, as determined to be necessary.

## NINTH CLAIM CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH A CONTRACT
#### (Against Defendant Tour Savant)

105. Plaintiff realleges and incorporates by reference allegations contained in the preceding paragraphs, as though fully set forth herein.

106. The Side Letter, attached hereto as Exhibit 5, constitutes a valid written contract between Rogers, Richard, Phillip, and Plaintiff.

107. Tour Savant had knowledge of the existence of the Side Letter because Tour Savant is owned 100% by Rogers, who was a party to the Side Letter.

108. Tour Savant intended to induce breach of the Side Letter by Rogers by using the monies received from Fintage to fund its own creation; thereby, preventing Rogers from assigning the monies received from Fintage to Plaintiff as required under the Side Letter.

109. Tour Savant acted maliciously because it had knowledge of the terms of the Side Letter and knew that if Rogers invested the monies from Fintage into Tour Savant, instead of assigning such monies to Plaintiff, Rogers would be breaching the contract. Nevertheless, Tour Savant accepted the monies from Fintage, causing Rogers to breach the Side Letter.

110. Rogers did, in fact, breach the Side Letter as a result of Tour Savant's interference with the Side Letter because Rogers did not assign the monies from Fintage to Plaintiff as required under the Side Letter.

111.    Tour Savant's interference with the Side Letter was the proximate cause of the breach of the contract. There were no other events that caused the breach besides Tour Savant's interference.

112.    As a result of Rogers' breach of the Side Letter, Plaintiff has suffered financial loss of at least $35,000 plus Accrued Interest, and such other damages as shall be hereafter proved.

113.    Defendants' acts were egregious, reckless, oppressive, malicious, and fraudulent subjecting Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights so as to justify an award of exemplary damages against them. Such conduct was unauthorized and was egregious, intentional, fraudulent or reckless under Tennessee law, entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of the Defendants in an amount to be determined at trial.

114.    Plaintiff asks the Court for the appointment of a receiver with all powers and duties as the Court directs. Said receiver should also be empowered to take other action required to preserve Tour Savant's assets wherever existing until a full hearing can be held.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Richard, Phillip, David, Tour Savant, and Hi-Def, collectively, the "Defendants" as follows:

1.    Rescission of his investment of $500,000 with Hi-Def;

2.    Alternatively, damages in the amount of at least $500,000, plus Accrued Interest;

3.    General, special, and consequential damages as permitted by law with regard to each and every claim herein;

24

4.     Appointment of a receiver with all powers and duties as the Court directs, who should also be empowered to take other action required to preserve Hi-Def and Tour Savant's assets wherever existing until a full hearing can be held;

5.     Disgorgement of all monies improperly received, held, or concealed by Defendants;

6.     Recovery of the cost of this action, including without limitation, reasonable attorneys' fees pursuant to Paragraph 8 of the Side Letter;

7.     For exemplary and punitive damages on Plaintiff's Fifth, Eighth and Ninth Claims for Relief against Defendants named therein, in addition to actual damages; and

8.     For all such other and further legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

Philip K. Lyon (Bar No. 013661)
Austen Adams (Bar No. 025233)
Lyon & Phillips PLLC
11 Music Circle South
Nashville  TN  37203
Main : 615-259-4664
Fax : 615-259-4668
pklyon@lyonandphillips.com
aadams@lyonandphillips.com

Neville L. Johnson (CA Bar No. 66329)
*Pro Hac Vice* Application Pending
Erin L. Pfaff (CA Bar No. 259349)
Of Counsel
Johnson & Johnson LLP
439 No. Canon Drive, Suite 200
Beverly Hills, California 90210
Main: 310- 975-1090
Fax: 310 975 1095 (fax)
njohnson@jjllplaw.com
epfaff@jjllplaw.com

25

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38(b) (28 U.S.C. § 38), and Local Rule 38.01.

DATED: November 12, 2010                    LYON & PHILLIPS PLLC

By

Philip K. Lyon